**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

CLAY A. CORNETT,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　Case No. 3:12-cv-233-J-99TJC-MCR

LENDER PROCESSING SERVICES, INC.

    Defendant.

**ORDER ON REMAINING DAMAGES ISSUE
AND ATTORNEYS' FEES AND COSTS**

This case is before the Court on Plaintiff's Proposed Final Judgment (Doc. 126), Defendant, Lender Processing Services, Inc.'s Response in Opposition to Plaintiff's Proposed Final Judgment (Doc. 130), Plaintiff Clay A. Cornett's Reply in Support of His Proposed Final Judgment (Doc. 140), Plaintiff's Motion for Attorneys' Fees and Costs (Doc. 127), and Defendant, Lender Processing Services, Inc.'s Response in Opposition to Plaintiff's Motion for Attorneys' Fees and Costs (Doc. 131). Upon review of these submissions and the record in this case, the Court rules as follows.

**I.  BACKGROUND**

This case involves a dispute between Clay Cornett and his former employer Lender Processing Services, Inc. ("LPS") over an employment contract. The case was tried before the Court on May 14, 15, and 16, 2013. Following trial, the parties submitted proposed findings of fact and conclusions of law (Docs. 118, 119), and on September 5, 2013, the Court entered its decision. (Doc. 123.)

The Court found that LPS had terminated Cornett without cause under his July 5,

2011 Employment Agreement ("2011 Agreement"), and was therefore required to pay Cornett the severance spelled out in the 2011 Agreement. (Id. at 15-20.) The Court found against Cornett on his claim for tortious interference (id. at 23-25), but further expanded upon its previous ruling on Cornett's claim for declaratory judgment and LPS's counterclaim for injunctive relief (see Doc. 117), finding that judgment should enter in Cornett's favor on both claims because he was not bound by the non-competition provision in the 2011 Agreement (Doc. 123 at 23, 25).

Based upon its findings, the Court determined that Cornett was entitled to $3,200,000 for the lump-sum payment provided in the severance (id. at 21), and $33,326.64 for the thirty-six months of COBRA payments provided in the severance (id. at 23). The Court also found that the 2011 Agreement required LPS to render immediately 55,899 shares of restricted LPS common stock owned by Cornett that LPS had cancelled, but noted that the parties had provided different valuations for those shares. (Id. at 22-23.)

The Court rejected Cornett's request for an additional $7,200,000 in compensatory damages. (Id. at 21.) The Court also declined to award any damages on Cornett's declaratory judgment claim (id. at 23), or for lost stock options (id. at 21-22), and determined that Cornett was not entitled to punitive damages because the Court found against him on his tortious interference claim (id. at 25). Finally, the Court concluded that Cornett was entitled under the 2011 Agreement to reasonable attorney's fees and costs. (Id. at 26.)

The Court directed the parties to confer and attempt to resolve the issue of the restricted stock valuation (id. at 23) and the proper form of final judgment consistent with the Court's rulings, including attorney's fees and costs (id. at 26). The Court instructed

Cornett to file the proposed final judgment, noting any disagreements, and, if necessary, file a motion for attorney's fees and costs with supporting documentation.  (Id.)

On September 25, 2013, Cornett submitted his Proposed Final Judgment, noting that the parties were unable to agree on how to handle the cancelled restricted stock or on that amount of fees and costs.  (Doc. 126.)  Under Cornett's proposal, he would receive the shares of stock themselves, rather than a monetary award based on the value of the shares.  (Id. at 1 n. 1.)   His proposal also includes an award of $590,116.65 in fees and $31,910.63 in costs.  (Doc. 126-1.)

Cornett's motion for attorneys' fees and costs argues that he obtained an excellent result in a complex case, that his attorneys' fees reflect the reasonable market rate that he actually paid, and that he reduced his fee request by the time spent on his unsuccessful tortious interference claim.  (Doc. 127.)  In support, Cornett submits affidavits and billing records of his attorneys, affidavits of three attorneys in the Jacksonville market attesting to the reasonableness of the rates charged and hours worked, and the affidavit of one of LPS's attorneys opining in a different case as to the reasonableness of an attorney's fee request.

In its response to the Proposed Final Judgment, LPS argues that Cornett's restricted stock request in effect seeks specific performance under the 2011 Agreement, which he had never requested before and to which he is not entitled.  (Doc. 130.)  LPS proposes that Cornett instead be awarded an amount equal to the estimated value of the stock on the date of his termination.  (Id. at ¶¶ 5, 12; Doc. 130-2.)

In responding to Cornett's motion for fees and costs, LPS argues that the reason the case went to trial—and Cornett's attorneys accumulated the fees they seek—was

3

Cornett's unreasonable damages request, which the Court largely rejected. (Doc. 131 at 1.) LPS proposes that Cornett's proposed fee be reduced by 50%, which LPS argues is still less than the percentage difference between Cornett's settlement demand and ultimate recovery at trial. (Id. at 7-8.) LPS also challenges the rates of certain of Cornett's attorneys, some of the hours expended, and the expenses incurred for document review software. (Id. at 7-9.)

Cornett filed a reply in support of his Proposed Final Judgment, arguing that he sought any and all of the relief allowed under the 2011 Agreement since the case began, including recovery of the shares of restricted stock rather than just their monetary value. (Doc. 140 at 2-3.) Cornett argues that, if the Court does not award him the shares, then he should at least receive their current value. (Id. at 5-7.)

## II.   ANALYSIS

### A.   Cancelled Restricted Stock

The Court first addresses the parties' dispute as to whether Cornett should receive the actual 55,899 shares of restricted LPS stock and, if not, the stock price to use to value the shares. The Court concludes that Cornett should receive the value for the shares on the date of his termination.

Cornett has consistently requested throughout this litigation the value of the cancelled shares of restricted stock. In his Amended Complaint, his Rule 26 disclosures, and the section of the joint Pretrial Statement entitled "Plaintiff's Claims for Money Damages," Cornett listed "reimbursement" for the shares at $26.50 per share for this component of his alleged damages. (Doc. 53 at 10; Doc. 131-1 at 3; Doc. 85 at ¶ 7.D.) Then, in his proposed findings of fact and conclusions of law both before and after trial, he

said he is entitled to $26.50 per share for 55,899 shares, for a total of $1,481,323.50, plus interest, for the restricted stock. (See Doc. 96 at 17; Doc. 119 at 28.) Thus, prior to his Proposed Final Judgment, filed only after the Court tried unsuccessfully to get the parties to resolve the issue, Cornett had made no request for the shares themselves.

Nor did Cornett demonstrate at trial or in his reply that he is entitled under Florida law to what amounts to specific performance of this provision of the 2011 Agreement. LPS correctly notes that "[t]o demonstrate a right to [specific performance] under Florida law, a plaintiff must plead facts showing: (1) the plaintiff is clearly entitled to this remedy; (2) there is no adequate remedy at law; and (3) justice must require it." (Doc. 130 at ¶ 8 (quoting La Gorge Palace Condo Ass'n, Inc. v. QBE Ins. Corp., 733 F. Supp. 2d 1332, 1334 (S.D. Fla. 2010))). Cornett does have an adequate legal remedy for LPS's failure to tender the restricted stock in the form of money damages for the value of the stock. See CIMA Capital Partners, LLC v. PH Cellular, Inc., 69 So. 3d 293, 294-95 (Fla. 3d DCA 2010) (reversing trial court's order of specific performance of stock option contract and remanding for entry of money damages as measured on date of breach). Thus, the Court will award the value of the stock, rather than the shares themselves.

Due to this dispute, the parties were unable to resolve the issue the Court directed them to address regarding the proper value of the stock. Until his Proposed Final Judgment, including at trial, Cornett had requested reimbursement for the stock at $26.50 per share, which he represented was the stock price on the day of his Rule 26 disclosures. (Doc. 53 at 10; Doc. 85 at ¶ 7.D; Doc. 108, Trial Tr. Vol. II at 62:21-23; Doc. 131-1 at 3.)

5

He now argues for the first time that the proper value is the current stock price.[1] (Doc. 140 at 5-7.) LPS argues that the Court should use the price of the stock on the date of Cornett's termination, from which they calculate the total value of the stock to be $1,270,025.28. (Doc. 70-1 at ¶ 9; Doc. 131 at ¶ 18.)

The Court finds that the proper valuation is the value of the stock on the date of termination. The Court rejects Cornett attempt to recast this issue as a claim for wrongful conversion, a theory he neither pleaded nor advanced at trial. Nor does the Court see any legal reason to measure Cornett's damages from the date of his Rule 26 disclosures, the date he actually did advance throughout this case. Instead, under Florida contract law, Cornett is entitled to damages measured as of the date of LPS's breach, in this case, the date of his termination. CIMA Capital Partners, LLC, 69 So. 3d at 294. Under the 2011 Agreement, Cornett was entitled to 55,899 shares of restricted stock with a total value on the date of his termination of $1,270,025.28. Rather than speculate as what Cornett would have done with those shares, the proper remedy for his loss of use is prejudgment interest from the date of his termination. Lumbermens Mut. Cas. Co. v. Percefull, 653 So. 2d 389, 390 (Fla. 1995) (recognizing "the general rule that prejudgment interest is allowed in Florida actions based on contract from the date the debt is due"); see CIMA Capital Partners, LLC, 69 So. 3d at 294 (awarding prejudgment interest for breach of stock option contract).

Therefore, the Court concludes that Cornett is entitled to an award of damages in

---

[1] The Court cannot help but notice that the stock price rose to $34.05 per share on the date of Cornett's reply, which represents an additional $422,037.45 in total value from his original request. (Id. at 7.)

the amount of $1,270,025.28, representing the total value of the 55,899 shares on the date of his termination at LPS, plus prejudgment interest.

### B.     Attorneys' Fees and Costs

The Court turns now to Cornett's request for an award of $590,116.65 for attorneys' fees and $31,910.63 for costs. The Court has already determined that Cornett is entitled to reasonable fees and costs. The issue now is whether the fees and costs Cornett requests are reasonable. Cornett argues that his request is justified by the results in this case and represents reasonable rates charged and hours spent on the case, as well as a reduction for those hours spent on his unsuccessful tortious interference claim. LPS responds that the amount of damages was the focus of this case, and Cornett recovered far less than he had demanded. LPS also takes issue with some of the rates charged and hours expended.

#### 1.     Rates Charged

In determining a reasonable fee award, courts determine "the number of hours reasonably expended on the litigation" and a reasonable hourly rate, the product of which is the "lodestar" reasonable sum the party may recover. Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). "The relevant legal community" is generally the place where the case is filed. Am. Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999). In determining if the requested rate is reasonable, the court may consider the

applicable Johnson factors[2] and may rely on its own knowledge and experience. Norman, 836 F.2d at 1299-1300, 1303; see Johnson v. Ga. Hwy. Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates," which must be more than just "the affidavit of the attorney performing the work." Norman, 836 F.2d at 1299 (citations omitted). Instead, satisfactory evidence may be the charges of lawyers in similar circumstances or opinion evidence. Id.

Cornett submits the affidavits of his two lead attorneys, their firms' billing records on this case, and the affidavits of three experienced local Jacksonville attorneys who attest that the rates charged and hours worked by Cornett's attorneys are reasonable. LPS agrees that the rates charged for attorneys T.A. Delegal, III and Geddes D. Anderson, Jr. are reasonable, as are the rate of paralegals Shana Stark and Julie Delegal, and law clerk James Poindexter. The Court also agrees that these rates are reasonable.[3]

---

[2] The Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson, 488 F.2d at 717-19.

[3] Cornett requests fees for his attorneys and paralegals at the following rates:

| | |
|---|---|
| Geddes D. Anderson, Jr. | $325 per hour |
| J. Rice Ferrelle, Jr. | $325 per hour |
| Jonathan A. Huth | $295 per hour |
| Shana Stark | $105 per hour |
| Christen E. Luikart | $295 per hour |
| Daniel A. Stocker | $295 per hour |

LPS does dispute the rates charged for the other attorneys who worked on the case and that any rate is appropriate for one of the paralegals (Moni Dover).  (Id.)  The Court agrees that, based primarily on the administrative nature of the work performed, the rate for the additional paralegal should be reduced entirely.  As for the additional attorneys (Ferrelle, Huth, Luikart, and Stocker), they range in experience from two-or-three years to nine years (Doc. 127-8 at ¶¶ 9-11, 13); the Court finds, based on its knowledge and experience, that their rates are within the range of reasonable rates for attorneys with their experience working on a case of this nature.  See Norman, 836 F.2d at 1303 ("'The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."  (quoting Campbell v. Green, 112 F.2d 143, 144 (5th Cir. 1940))).  Moreover, these rates were actually charged to and paid by Cornett, "powerful, and perhaps the best, evidence of [the attorneys'] market rate."  Dillard v. City of Greensboro, 213 F.3d 1347, 1354-55 (11th Cir. 2000).  Thus, the Court concludes that the rates requested are reasonable.

### 2.   Hours Worked and Expenses Incurred

In evaluating a party's fee request, a court may conduct an hour-by-hour analysis of the fees requested or, if appropriate, apply an across-the-board reduction.  Id. at 1351.

---

| | |
|---|---|
| T.A. Delegal, III | $325 per hour (before January 1, 2009) |
| | $350 per hour (from May 1, 2011 to July 1, 2013) |
| | $375 per hour (after July 1, 2013) |
| Moni Dover | $70 per hour |
| James Poindexter | $70 per hour |
| Julie Delegal | $70 to $85 per hour |
| Barbara Pease | $100 per hour |

An across-the-board method is often preferable so as to avoid the "pick and shovel work" of pouring through voluminous billing records. Kenny A. v. Perdue, 532 F.3d 1209, 1220 (11th Cir. 2008); Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir. 1994) ("Where fee documentation is voluminous, such as the instant case, an hour-by-hour review is simply impractical and a waste of judicial resources. . . . In cases like this one, where the fee motion and supporting documentation are so voluminous, it is sufficient for the court to provide a concise but clear explanation of its reasons for the reduction."); Trujillo v. Banco Central del Ecuador, 229 F. Supp. 2d 1369, 1375 (S.D. Fla. 2002).

The fees records in this case are voluminous[4] and involve numerous attorneys at different firms. The Court has conducted a review of the records and affidavits submitted in support. Counsel for Cornett has generally exercised appropriate billing judgment, including by reducing the fees requested by $32,306.08 and costs by $2,248.35 to account for most, but not all, of the charges related to the unsuccessful tortious interference claim. Barnes, 168 F.3d at 428 (requiring fee applicants to use "billing judgment" to remove excessive, redundant and unnecessary hours). However, some reduction is warranted for the charges related to that claim that are still in Cornett's request, as well as for certain redundant, duplicative, and administrative charges and charges that deal with related but separate litigation against LPS. Rather than pick through each such charge to determine whether to reduce it and by how much, the Court will factor these charges into its overall analysis of what reduction, if any, is appropriate.

In addition to questioning certain of the billing entries, LPS challenges expenses

---

[4] The billing entries submitted are voluminous aside from what appear to be four copies of the same fifty-seven-page spreadsheet. (See Docs. 127-3, 127-4, 127-5, 127-6.)

10

relating to reviewing a large, electronic document production, including $2,425 for a one-year license of "Concordance" document review software, $693.50 for technical support, and $2,150 in fees for the temporary employment of a paralegal to assist with the review. Cornett represents that LPS produced a large database of documents in discovery that required specialized software to review and technical support to load and maintain. (Doc. 127 at 18; Doc. 127-1 at ¶ 10.) The software was licensed specifically for this case and the paralegal's work was limited to this case. (Doc. 127 at 18.) LPS responds that the documents needed no special software to be viewed, let alone an extra staff member to manage it. (Doc. 131 at 9-10.)

The software, the technical support, and the paralegal's time do fall under the broader umbrella of "litigation expenses" recoverable under the 2011 Agreement. (Doc. 53-1 at 10.) It is not unusual, and is often preferable, for parties in complex cases to use litigation support software to conduct document review. The Court determines that the fees for the software, technical support, and paralegal assistance are reasonable.

### 3. **Results Obtained**

The main dispute regarding Cornett's fees is whether the results obtained at trial support the fees requested. Cornett concedes that he failed on his tortious interference claim and represents that he reduced his fee requested by $32,306.08 and cost by $2,248.35 accordingly. LPS responds that Cornett recovered only one-third of the damages he demanded during the parties' limited settlement negotiations. Thus, in its view, Cornett did not prevail on the significant issues at trial, and his award should be reduced by half. The Court finds that a reduction is appropriate to account for the results ultimately obtained, but not the level of reduction suggested by LPS.

After calculating the appropriate rate and number of hours worked, "the court has the opportunity to adjust the lodestar to account for other considerations that have not yet figured into the computation, the most important being the relation of the results obtained to the work done." Dillard, 213 F.3d at 1353; see Hensley v. Eckerhart, 461 U.S. 424, 436 (holding that a fee application based on claims that were "interrelated, nonfrivolous, and raised in good faith" may still be excessive where the applicant achieved only partial or limited success). In addition to the severance specified in the 2011 Agreement, Cornett sought a total of $9,600,000 in additional damages he claims he would have earned by either serving out the rest of the contract term with LPS or by working at Fidelity National Financial. (Doc. 108, Trial Tr. Vol. II 63:22-64:4, 97:9-98:13). The Court denied these requests. (Doc. 123 at 21, 23.) Some reduction of the fees and costs requested to account for this result is appropriate.

Damages were not the only issue at trial, however, and, just as important, damages issues were likely not the main driver of expenditures of time and fees, at least at trial.[5] LPS strongly disputed the threshold issue of whether Cornett had been terminated without cause. Cornett won on that issue and obtained a substantial damages award as a result. (Id. at 20.) He may not have recovered the additional damages he sought, but the marginal cost of litigating them on top of the core issue of whether his termination was with or without cause was relatively low.

Based on its assessment of the record in this case, the billing records submitted, and the results obtained, the Court finds that an across-the-board reduction of 10%

---

[5] The Court puts little weight on the positions the parties took in their settlement correspondence.

appropriately accounts for those redundant, duplicative, and administrative charges in the billing records discussed earlier and for Cornett's substantial but not complete success at trial. Thus, after removing the charges for Ms. Dover's work, the Court determines that an award of $530,330.09 in fees and $28,719.57 in costs, for a total award of $559,049.66, is appropriate. The Court will enter Final Judgment consistent with this Order.

**DONE AND ORDERED** at Jacksonville, Florida, on this 17th day of December, 2013.

_____
TIMOTHY J. CORRIGAN
United States District Judge

bjb.
Copies:

Counsel of Record